UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

BILLY JOE AMBROSE, *ET AL*.     )
                                )
    Plaintiffs,              )
                                )
v.                              )     No. 2:08-CV-253
                                )
UNICOI COUNTY, TENNESSEE, *ET AL*., )
                                )
    Defendants.              )

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the individual defendants' motions for summary judgment, [Docs. 23 and 26]. In the first motion, [Doc. 23], the individual defendants move for summary judgment on all of Bobby Joe Ambrose's ("Joey Ambrose") claims. In the second motion, [Doc. 26], the individual defendants move for summary judgment as to all claims by Billy Joe Ambrose ("Billy Joe Ambrose"). The plaintiffs have responded to the motions, and the matter is ripe for review. For the reasons that follow, both motions are **GRANTED**.

**I. FACTS[1]**

---

[1]This Court notes that the plaintiffs failed to follow the Scheduling Order and did not file a separate response to the defendants' statements of material facts. The plaintiffs also did not set forth any additional facts that should be considered. However, the Court discerns from the arguments contained in the response which facts the plaintiffs dispute.

Billy Joe Ambrose owns two buildings which are connected. They are located at 106 and 108 Union Street in Erwin, Tennessee. Billy Joe Ambrose lives in an apartment at 108 Union Street. Joey Ambrose, Billy Joe Ambrose's son, lived in an apartment at 106 Union Street with his wife and child.[2] Also, Barbara Ambrose, who is Billy Joe Ambrose's ex-wife and Joey Ambrose's mother, lives in an apartment at 106 Union Street. In addition, there is a garage located at 106 Union Street.

On April 23, 2008, the defendants procured a search warrant for 106 Union Street. The defendants executed the search warrant and found evidence that methamphetamine was being manufactured at that address. After the search, Joey Ambrose was arrested and charged with committing several federal crimes relating to methamphetamine and the evidence found at the address.[3] The criminal case number is 2:08-CV-253.

In the criminal case, Joey Ambrose moved to suppress the evidence obtained during the search on the basis that the search warrant and its execution were unconstitutional. United States Magistrate Judge Dennis H. Inman conducted a

---

[2] Joey Ambrose is now in the custody of the Bureau of Prisons.

[3] Joey Ambrose was charged and convicted of violating Title 21 United States Code sections 841(a)(1), 843(a)(6), 846, 856(a)(1) and Title 18 United States Code sections 922(g)(1) and 924(c)(1)(A).

hearing, and the United States and the defense called witnesses, including Tennessee Criminal Court Judge Robert E. Cupp, who had issued the search warrant. Based upon the evidence presented, the magistrate judge filed a Report and Recommendation, [Doc. 176 in case no. 2:08-CR-39], finding the search to be constitutional. United States District Court Judge Leon Jordan entered an Order approving the Report and Recommendation, [Doc. 196 in case no. 2:08-CR-39]. The trial ensued, and Joey Ambrose was convicted on multiple felony counts. On July 9, 2010, Judge Jordan held a sentencing hearing, and the Court entered Judgment on July 13, 2010, imposing a 168-month sentence.[3]

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis,*

---

[3]At the time the defendants filed their motions and the plaintiffs responded, Joey Ambrose had not been sentenced.

*Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the non-moving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McClain v. Ontario, Ltd.*, 244 F.3d 797, 800 (6th Cir. 2000). This Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If this Court concludes that a fair-minded jury could not return a verdict in favor of the non-moving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

The party opposing a Rule 56 motion may not simply rest on the mere

allegations or denials contained in the party's pleadings. *Anderson*, 477 U.S. at 256. Instead, an opposing party must affirmatively present competent evidence sufficient to establish a genuine issue of material fact necessitating the trial of that issue. *Id.* Merely alleging that a factual dispute exists cannot defeat a properly supported motion for summary judgment. *Id.* A genuine issue for trial is not established by evidence that is "merely colorable," or by factual disputes that are irrelevant or unnecessary. *Id.* at 248-52.

### III. ANALYSIS

As stated, in the first motion, [Doc. 23], the individual defendants move for summary judgment on all of Joey Ambrose's claims. In the second motion, [Doc. 26], the individual defendants move for summary judgment as to all claims by Billy Joe Ambrose. The Court will discuss each motion in turn.

#### A. Joey Ambrose's Claims and the *Heck v. Humphrey* Doctrine

The defendants first argue that they are entitled to summary judgment as to Joey Ambrose's claims because *Heck v Humphrey*, 512 U.S. 477, 486-87 (1994) prevents Joey Ambrose from pursuing a section 1983 action. "*Heck* bars § 1983 plaintiffs from advancing claims that, if successful, 'would necessarily imply the invalidity' of a prior conviction." *Cummings v. City of Akron*, 418 F.3d 676, 682 (6th Cir. 2005) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487(1994)). However, if the

5

plaintiff's actions would not demonstrate invalidity of an outstanding criminal judgment, then the action would not be barred. *See id.*

Here, Joey Ambrose filed this section 1983 action alleging his Fourth Amendment rights were violated due to an illegal search–i.e., an invalid search warrant. Joey Ambrose argues that his action is not barred by the *Heck* doctrine because a favorable ruling here will not invalidate his conviction because there was evidence in the criminal trial record sufficient to convict him without the evidence seized in the search. The plaintiff states in his response that this evidence is testimony from "two of the biggest methamphetamine cooks in upper east Tennessee." Joey Ambrose claims that these two witnesses testified at the criminal trial that he was directly involved in the illegal methamphetamine business and that he used a gun to steal chemicals used in the manufacturing process from them.

The plaintiff, however, did not attach evidence of this testimony to his response. He merely makes this unsupported claim in his brief. Federal Rule of Civil Procedure 56(e)(2) states that a party opposing a motion for summary judgment may not rely on allegations or denials in pleadings. Fed. R. Civ. P. 56(e)(2). This Court notes that the transcripts from the criminal trial were filed as document 332, which contains the testimony referred to by the plaintiff. However, even if this Court considered such testimony, it does not affect this Court's ruling.

Clearly, the plaintiff filed this action alleging that his constitutional rights were violated by the illegal search. In the criminal case, the plaintiff moved to suppress the evidence found as a result of the search based upon the alleged unconstitutionality of the search–the same grounds. He was unsuccessful, and his motion to suppress was denied. If this section 1983 claim were to be successful, then it would necessarily imply the invalidity of a prior conviction despite any corroborating evidence from other methamphetamine manufacturers. *See Hemphill v. Haglund*, No. 02-1025, 2002 WL 31074581, \*\*2 (6th Cir. Sept. 16, 2002) (deciding section 1983 claim barred by *Heck* doctrine because ruling that search was illegal would necessarily imply the invalidity of his conviction).

Joey Ambrose was convicted of conspiracy to distribute and to possess with the intent to distribute methamphetamine, *see* 21 U.S.C. §§ 841(a)(1), 846; conspiracy to manufacture methamphetamine, *see id*.; possessing ingredients used to manufacture methamphetamine, *see* 21 U.S.C. § 843(a)(6); maintaining a place to manufacture, distribute and use methamphetamine, *see* 21 U.S.C. § 856(a)(1); and two other related gun offenses, *see* 18 U.S.C. §§ 922(g)(1), 924(c)(1)(A). Some of the essential elements of these offenses include possessing the methamphetamine, its ingredients, or equipment used to manufacture the drug. In addition, as to the gun offenses, an essential element is that there be a gun. This was the nature of the

evidence seized in the search. It is very difficult for this Court to imagine that such evidence would not have had a significant impact in the criminal trial especially in view of the fact that the government's case beyond that was based almost entirely on the word of "two of the biggest methamphetamine cooks in upper east Tennessee." In addition, the plaintiff candidly admitted that he "recognizes that [the search warrant] may have had some bearing on his ultimate conviction." [Doc. 35, ¶ 2].

Accordingly, this Court concludes that the *Heck* doctrine bars Joey Ambrose's section 1983 action, and the individual defendants' motion is **GRANTED**. Because the Court has granted the motion on this ground, it need not discuss the alternative grounds for dismissal sought by the defendants.

## B. Billy Joe Ambrose's Claims and Qualified Immunity of Defendants

In the second motion, [Doc. 26], the individual defendants move for summary judgment as to all claims by Billy Joe Ambrose. The defendants submit that they are entitled to qualified immunity.

> In determining an officer's entitlement to qualified immunity [this Court] follow[s] a two-step inquiry.[4] *Saucier v. Katz*, 533 U.S. 194, 201-02, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001). First taken in the light most favorable to the plaintiff, [the Court] decide[s] whether the

---

[4]The Supreme Court recently held that the *Saucier* approach is no longer mandatory, and the district courts can elect to decide the second issue without determining whether a constitutional violation actually occurred. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009). This Court will use the two step approach of *Saucier*.

> facts alleged show the officer's conduct violated a constitutional right. *Id.* at 201. If no constitutional right would have been violated were the plaintiff's allegations established, there is no need for further inquiry into immunity. If a violation can be made out on a favorable view of the plaintiff's submissions, [the Court] next ask[s] whether the right was clearly established. *Id.*

*Vakilian v. Shaw*, 335 F. 3d 509, 516-17 (6th Cir. 2003). In general, government officials performing discretionary functions are shielded "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "[A]ll but the plainly incompetent or those who knowingly violate the law" are protected by qualified immunity. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The relevant question for the Court regarding whether the right was clearly established is not the subjective intent of the defendant, but whether a reasonable officer would have believed the defendant's conduct to be lawful, in light of the clearly established law and information possessed by the defendant. *Anderson*, 43 U.S. at 640.

It is undisputed that Billy Joe Ambrose owned the connected building at 106 and 108 Union Street. It is also undisputed that the individual defendants did not search Billy Joe Ambrose's residence. He essentially alleges that his constitutional rights were violated as a result of the search the garage and other areas of the building. In determining whether the individual defendants are entitled to qualified immunity,

9

this Court will, thus, analyze the issue based on the different areas of the premises searched by the defendants. This Court will first examine the issue in terms of the garage and then the common areas–i.e., the hallway of 108 Union Street and the attic and roof of 106 Union Street.[5]

First, the defendants assume for purposes of this motion only that Billy Joe Ambrose had a constitutional right to privacy in the garage. However, despite this right to privacy, they claim that they are still entitled to qualified immunity because the search warrant was constitutional and because a reasonable officer could have believed that the search was constitutional. As the defendants noted, they are not claiming that the decision of the magistrate judge and district judge that the search was constitutional is legally binding upon the plaintiff. Instead, they argue that if the two jurists reviewed the arguments and determined as such, then surely a reasonable law enforcement officer could have believed that the search warrant as to the garage was constitutional.

The plaintiff basically argues that the question is whether a reasonable officer could have believed that the search warrant complied with Tennessee law. This Court agrees with the defendants in that the standard for section 1983 purposes

---

[5]This Court notes that Billy Joe Ambrose concedes that he does not have a constitutional right to privacy in the tenants' apartments. *See* Doc. 40, page 3; *see also Johnson v. Weaver*, 248 Fed.Appx. 694, 697 (6th Cir. 2007).

is whether the search complied with the Fourth Amendment. As the magistrate judge explained in his Report and Recommendation, [Doc. 169 in case no. 2:08-CR-39], and as approved by the district judge, this Court agrees, for all the reasons cited in the Report and Recommendation, which is an exhibit hereto, that the search of the garage was constitutional. Thus, this Court finds that there is no genuine issue of material fact that plaintiff's constitutional rights were violated by the search of the garage. As such, the individual defendants are entitled to qualified immunity, and their motion is **GRANTED**.

Second, this Court will analyze the qualified immunity issue as to the "common areas" of 106 and 108 Union Street. The evidence in the record, namely testimony from the suppression hearing, indicates that the attic was not a common area but was part of Joey Ambrose's apartment, in which Billy Joe Ambrose concedes he does not have a right to privacy. *See* Doc. 176 in case no. 2:08-CR-39, page 70. Therefore, the motion is **GRANTED** in this respect because there is no genuine issue of material fact that the plaintiff's constitutional rights were violated as a result of the searching the attic. Also, there is no evidence in the record that individual defendants Michael Hensley, Stacy Wiggand or David Walker were ever present in the hallway. Thus, the motion in that respect as to them is **GRANTED**. There is, however, evidence that Sheriff Harris and Officer Adkins entered the hallway. Accordingly,

11

this Court will fully analyze the issue as to these two defendants.

Initially, this Court must decide whether Billy Joe Ambrose had a right to privacy in the hallway. If he did not, then no constitutional violation as a result of an alleged illegal search could have occurred. If he did have a right to privacy in the hallway, then the Court must determine whether the defendants' conduct violated Billy Joe Ambrose's constitutional rights.

A person's reasonable expectation of privacy is explained in *United States v. Dillard*, 438 F.3d 675, 682 (6th Cir. 2006), from the perspective of a criminal defendant. That case states:

> A person has an expectation of privacy if he has a subjective expectation of privacy, and if society is prepared to recognize that expectation as objectively reasonable. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring). In analyzing whether a subjective expectation of privacy is objectively reasonable, this court considers a number of factors: (1) whether the defendant was legitimately on the premises; (2) his proprietary or possessory interest in the place to be searched or the item to be seized; (3) whether he had the right to exclude others from the place in question; and (4) whether he had taken normal precautions to maintain his privacy. *See United States v. King*, 227 F.3d 732, 744 (6th Cir. 2000).

*Id*.

There is no Sixth Circuit case law directly on point. The plaintiff cites *United States v. Carriger*, 541 F.2d 545 (6th Cir. 1976), and *McDonald v. United States*, 335 U.S. 451 (1948). *Carriger* is discussed in *Dillard*, which this Court cited

above. All three cases involved a tenant's expectation of privacy, not a landlord's. Nevertheless, the cases are instructive, and this Court concludes from those cases that a landlord would not have a reasonable expectation of privacy in a common hallway that is more or less open to the public because the doors to access the hallway from the outside are always unlocked. *See* Doc. 176 in case no. 2:08-CR-39, page 76. In addition, in this multi-unit building, which houses apartments and/or "boarding rooms," many people may be expected to enter and leave through the hallway. *See See* Doc. 176 in case no. 2:08-CR-39, page 184. Accordingly, this Court finds that the plaintiff did not have a reasonable expectation of privacy in the common hallway area; thus, his constitutional rights could not be violated as a result of an alleged illegal search of this area. The defendants' motion in this regard is **GRANTED**.

This Court just concluded that the plaintiff had no expectation of privacy in the common hallway of 108 Union Street, but determining whether he has an expectation of privacy in the roof area of 106 Union Street is a closer question. Before discussing the details, this Court notes that only Officers Hensley and Adkins were present on the roof. As such, the motion as to the other defendants is granted since they were not present in this area.

As to whether Officer Hensley and Adkins are entitled to qualified immunity, it appears from the testimony at the suppression hearing that the door

leading to the roof area was not locked, and the roof was accessible. *See* Doc. 176 in case no. 2:08-CR-39, page 116. Further, unlike in *King*, where the Sixth Circuit held that there was an expectation of privacy in an unlocked basement of a duplex, this was not a duplex but a multi-unit building. 227 F.3d at 758; *see also Dillard*, 438 F.3d at 684 (distinguishing *King*). Further, generators were located on the roof, and one might expect that people other than the landlord and tenants would need access to those generators. In addition, the roof is actually out in the open, exposed for anyone situated at a higher elevation to see. No steps were taken by the plaintiff to ensure that this area would remain private. For those reasons, the Court concludes that the plaintiff did not have an expectation of privacy in the roof. Therefore, the defendants' motion is **GRANTED**. Furthermore, for the reasons stated in the Report and Recommendation as to Joey Ambrose, even if the plaintiff did have an expectation of privacy in the roof, this Court finds that there was no constitutional violation from a cursory search for people of a building being evacuated due to public safety, considering the evidence that methamphetamine was being manufactured in the building.

Because this Court did not find a constitutional violation regarding the search of the roof, this Court need not proceed further into the inquiry. Nonetheless, this Court will briefly address whether the law is clearly established regarding the

plaintiff's expectation of privacy in the roof and the search thereof. In *Brosseau v. Haugen*, 543 U.S. 194, 199-200 (2004), the Supreme Court set forth two means by which a section 1983 plaintiff may show that a right was clearly established. A plaintiff may establish that a violation "was sufficiently obvious under the general standard of constitutional care that the plaintiff need not show a body of materially similar case law" or prove that an officer "fail[ed] to adhere to a particularized body of precedent that squarely governs the case." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005) (citing *Brosseau*, 543 U.S. at 199-200) (internal quotation marks and brackets omitted).

Even if there were a violation, it by no means can be considered obvious. Thus, this Court will determine whether Officers Hensley and Adkins "fail[ed] to adhere to a particularized body of precedent that squarely governs the case." *Lyons*, 417 F.3d at 579. Here, there is no case law directly on point regarding a landlord's expectation of privacy. Further, the analogous case law by no means "squarely governs the case." *Id*. The closest case is *King*, and in that case, it dealt with an unlocked basement in a duplex and not a multi-unit building. 227 F.3d at 750. Therefore, this Court cannot conclude that the officers failed to adhere a body of precedent which squarely governs the case. Therefore, Defendants Hensley and Adkins' motion is **GRANTED** in this regard.

## IV. CONCLUSION

In sum, for the reasons stated above, the individual officers motions, [Docs. 23 and 26], are **GRANTED**. All claims by Billy Joe Ambrose and Bobby Joe Ambrose against the individual defendants are **DISMISSED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE